[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 29, 2009
THOMAS K. KAHN
CLERK

No. 08-14809
Non-Argument Calendar

_____

D. C. Docket No. 08-00074-CR-WS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SCOTT DOUGLAS MYERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(July 29, 2009)

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Scott Douglas Myers appeals his 96-month sentence imposed for conspiracy

to commit bank fraud and making or possessing counterfeited securities. On appeal, he argues that his sentence was substantively unreasonable because: (1) the facts of his case did not justify the district court's upward variance from his guidelines range of 51 to 63 months of imprisonment; and (2) the upward variance was improperly based on factors that also were used to calculate his guidelines range. In addition, Myers argues that the district court plainly erred by ordering that his 96-month sentence run consecutively to any future sentence imposed by another district court for the conduct underlying his present offense. We AFFIRM.

## I. BACKGROUND

On 17 April 2008, Myers pleaded guilty to one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and one count of making or possessing counterfeited securities, in violation of 18 U.S.C. § 513. At his guilty-plea hearing, the government articulated the factual basis for Myers's plea as follows: In February 2008, the government received information that an individual in a green minivan was recruiting people from outside a homeless shelter to cash false payroll checks at Wal-Mart stores. Doc. 160 at 22. Officers stopped the van in Mobile County, Alabama. Id. The driver of the van, Joseph Stanley, told the officers that a group of four people, led by Myers, had asked him to help them recruit homeless people to cash false payroll checks at Wal-Mart stores. Id. at 22-

2

23.  Three of Myers's co-defendants consented to searches of their residences and made statements to the police.  Id. at 23.  Based on these searches and statements, officers learned that, beginning in 2007, Myers and his co-defendants had recruited homeless people in various cities in the United States.  They would use a homeless individual's personal information to print false payroll checks payable to the homeless individual, and then transport the individual to a Wal-Mart store to cash the check, which was typically made out in the amount of $250-$300.  Id.  The homeless individual who cashed the check would receive approximately $25 of the check amount, while Myers and his co-defendants would split the remainder.  Id. at 23-24.

Under the Sentencing Guidelines, Myers's base offense level was seven, pursuant to U.S.S.G. § 2B1.1(a)(1).  According to the presentence investigation report ("PSI"), Myers and his co-defendants had victimized at least 119 Wal-Mart stores in various cities in Louisiana, Texas, Alabama, Oklahoma, Arkansas, Kansas, and Missouri, resulting in a loss of $94,846.51.  For the purpose of calculating Myers's guideline range, this amount was determined to be the actual loss in the case, yielding an eight-level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(E), because the loss amount was more than $70,000 but less than $120,000.  Because the PSI indicated that Myers had orchestrated the fraudulent

scheme and his co-defendants had viewed him as their leader, his offense level was increased by four levels for acting as a leader or organizer of criminal activity involving five or more participants, under U.S.S.G. § 3B1.1(a). Myers's offense level was further increased by two levels, pursuant to U.S.S.G. § 2B1.1(b)(9)(A), for relocating a fraudulent scheme to another jurisdiction in order to evade law enforcement. The probation officer then decreased Myers's offense level by three levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), yielding a final adjusted offense level of 18. Myers's criminal history, which included seven counts of conviction that were related to fraudulent behavior, initially was given a criminal-history score of ten. Because Myers was on supervised release as a result of his previous convictions in the Northern District of Ohio at the time he committed his present offenses, the probation officer added two additional points to his criminal-history score, resulting in a total criminal-history score of 12 and a criminal history category of V. Accordingly, based on a total offense level of 18 and a criminal history category of V, the probation officer set Myers's guideline range at 51 to 63 months of imprisonment.

At sentencing, the district court noted that it had planned on conducting a hearing concerning Myers's revocation of supervised release in a matter that had been transferred to the court from the Northern District of Ohio, and that Myers

4

had objected to the court conducting the revocation hearing. Doc. 160-2 at 5. The parties noted that Myers's supervised release was subject to revocation due, in part, to the conduct underlying Myers's present offense. Id. at 4-5. Noting Myers's objection, the district court indicated that the revocation hearing could take place in the Northern District of Ohio at a later date, absent an agreement to the contrary by the parties. Id. at 6-7.

The district court adopted the factual findings and guideline applications contained in the PSI. Id. at 36. Myers requested that the court sentence him at the low end of his guideline range, arguing that the PSI overrepresented his criminal history. Id. at 37. The government asserted that the court should sentence Myers at the high end of his guideline range because: (1) Myers was serving a term of supervised release when he committed his present offenses; and (2) Myers's fraudulent scheme was extensive, causing significant harm in a number of states. Id. at 37-38. The district court then sentenced Myers to a term of 96 months of imprisonment and 5 years of supervised release, noting that: (1) Myers's scheme was extensive, targeting a large number of Wal-Mart stores and utilizing numerous homeless individuals to perpetrate fraud; (2) Myers had previous convictions in two federal courts, including a conviction for failure to appear; and (3) Myers was on supervised release for federal offenses at the time he committed his present

offenses. Id. at 38-41. The district court specified that its sentence would run consecutively to the sentence imposed upon revocation of Myers's supervised release and to any sentence imposed in any jurisdiction based on his fraudulent scheme. Id. at 40-41. The district court provided the following explanation for its sentence:

> It is the judgment of this Court that a guideline sentence is inappropriate and that a sentence above the Guidelines is needed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment to afford adequate deterrence to criminal conduct and to protect the public from your further crimes.
>
> Apparently, we have been unsuccessful in protecting the public from your further crimes by punishing you before and putting you on supervised release, only to have you continue to perpetrate crimes against the United States. So, a sentence within the Guidelines does not do that.

Id. at 40.

Myers objected to his sentence as unreasonable because it was above his guideline range. Id. at 43. In its order, the district court specified that the 96-month sentence would run "consecutively to the federal revocation yet to be imposed in the Northern District of Ohio, or any other jurisdiction where charges are brought, related to this case." Doc. 128 at 2. Myers did not object to the district court's determination that his sentence would be served consecutively to any future sentence imposed for related conduct. See generally Doc. 160-2.

6

## II. DISCUSSION

A.    Reasonableness of Sentence

We review a defendant's sentence for reasonableness.  Gall v. United States, 552 U.S. 38, ___, 128 S. Ct. 586, 594 (2007); United States v. Talley, 431 F.3d 784, 785 (11th Cir. 2005) (per curiam).  Review for reasonableness is deferential. Talley, 431 F.3d at 788.  The reasonableness of a sentence is reviewed under an abuse-of-discretion standard, regardless of whether the sentence imposed is inside or outside a defendant's guideline range.  United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (citing Gall, 552 U.S. at ___, 128 S.Ct. at 591).  Under the abuse-of-discretion standard, we will reverse only if the district court made a clear error of judgment.  Id. at 1191.  "[A] sentence may be substantively unreasonable, regardless of the procedure used."  United States v. Hunt, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006).

The party challenging the sentence "bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)."  Talley, 431 F.3d at 788.  Section 3553(a) provides that, in imposing a sentence, a district court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5)

the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

Id. at 786. We have recognized that "there is a range of reasonable sentences from which the district court may choose." Id. at 788. Where the court imposes a sentence that is within the guideline range, we ordinarily expect that sentence to be reasonable. Id. Where the sentence imposed is outside the guideline range, we may not presume the sentence is unreasonable. Gall, 552 U.S. at ___, 128 S.Ct. at 597. We may, however, consider the extent of the variance, giving due deference to the district court's determination that the § 3553(a) factors justify the extent of the variance. Id.

District courts may determine, on a case-by-case basis, the relative weight to give to the guidelines, as long as this determination is made with reference to the § 3553(a) factors. Hunt, 459 F.3d at 1185. We have rejected a defendant's argument that a district erred by varying above his guideline range based on his criminal history, even though his criminal history already was reflected in his guideline range. See United States v. Williams, 526 F.3d 1312, 1324 (11th Cir. 2008). Moreover, § 3553(a)(1) requires that the district court consider "the nature and circumstances of the offense and the history and circumstances of the

8

defendant." 18 U.S.C. § 3553(a)(1).

As an initial matter, we note that Myers challenges only the substantive reasonableness of his sentence, not its procedural reasonableness. See United States v. Livesay, 525 F.3d 1081, 1091 (11th Cir. 2008) (explaining that a procedural error would include a district court failing to calculate, or improperly calculating, a defendant's guideline range; treating the guidelines as mandatory; failing to consider the § 3553(a) factors; choosing a sentence based on clearly erroneous facts; or failing to explain its chosen sentence). Accordingly, Myers has abandoned any claim as to the procedural reasonableness of his sentence. United States v. Jernigan, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003) (stating that a party abandons an issue if he does not raise it in his initial brief).

Here, Myers has failed to meet his burden of demonstrating that his sentence was substantively unreasonable. Because Myers led others in an extensive fraudulent scheme, resulting in a loss amount of almost $95,000, had a lengthy criminal history, and committed his present offenses while serving a term of supervised release for another federal offense, the court did not abuse its discretion in determining that a 96-month sentence was necessary to deter criminal behavior and promote respect for the law. Williams, 526 F.3d at 1322-23 (finding that a sentence above the guidelines range was not unreasonable where the district court

9

considered several of the § 3553 factors in determining the sentence).

Moreover, the district court did not abuse its discretion in determining that Myers's guideline range failed to serve the purposes of sentencing in this case, and did not improperly consider Myers's criminal history and supervised release violations for purposes of an upward variance, despite the fact that his criminal history was used to calculate his guideline range. Id. at 1323-24. While Myers contends that his sentence necessarily exceeds those received by similarly situated defendants because the court varied above his guideline range based on factors that were used to calculate his guideline range, his argument lacks merit because, as noted previously, a district court does not abuse its discretion in considering a factor used to calculate a defendant's guideline range for purposes of an upward variance under § 3553(a). Id.

Because the district court has the discretion to determine that a sentence above a defendant's guideline range is necessary to serve the purposes of sentencing, the district court did not abuse its discretion in imposing an upward variance, regardless of whether it based the variance on factors that also were used to calculate Myers's guideline range. Furthermore, given the serious and extensive nature of Myers's offense and his likelihood of recidivism, Myers has not met his burden of demonstrating that his sentence was substantively unreasonable.

B.    Order That Sentence Run Consecutively to Future Sentence(s)

Where a defendant raises an argument for the first time on appeal, we review for plain error only.  United States v. Mangaroo, 504 F.3d 1350, 1353 (11th Cir. 2007).  "Under this standard, we may exercise our discretion to correct a forfeited error where there is (1) an error, (2) that is plain, (3) that affects substantial rights (which usually means that the error was prejudicial), and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id.  In order for an error to be "plain," it must be contrary to controlling precedent or the clear language of a statute or rule.  United States v. Lett, 483 F.3d 782, 790 (11th Cir. 2007).

Under 18 U.S.C. § 3584(a), "[i]f multiple terms of imprisonment are imposed on a defendant at the same time . . . the terms may run concurrently or consecutively. . . . Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."  18 U.S.C. § 3584(a).  In United States v. Ballard, 6 F.3d 1502, 1507 (11th Cir. 1993), we recognized that § 3584(a) does not precisely address whether a federal district court possesses authority to order that its sentence run consecutively to an unimposed, unrelated state sentence.  We held that it does, primarily basing our decision on principles of dual sovereignty and the need to protect both the federal

11

and the state courts' right to ensure that the defendant serve the entirety of his federal and state sentences.  See id. at 1507-10.

In United States v. Andrews, 330 F.3d 1305, 1306 (11th Cir. 2003), we considered a similar case where a district court sentenced the defendant to 24 months of imprisonment upon revocation of his supervised release.  Noting that both federal and state charges had been filed against the defendant for the same conduct by which he had violated the terms of his supervised release, the district court ordered that his sentence run "consecutively to any other term of imprisonment imposed for any criminal conduct that is the basis of the violation." Id. (quotation omitted).  Relying on Ballard, we held that the district court possessed the authority to order that its sentence run consecutively to any future sentence imposed for related conduct.  Id. at 1307-08.  Although the district court order at issue in Andrews appeared to implicate federal sentences that had not been imposed, we did not specifically discuss the potential concerns that could arise where a district court orders that its sentence run consecutively to an unimposed, future federal sentence.  See id. at 1306-07.

Nevertheless, Myers cannot show plain error because he cites no controlling precedent holding that a district court may not order that its sentence run consecutively to another district court sentence that has not yet been imposed.

12

Lett, 483 F.3d at 790.

## III. CONCLUSION

Myers has not met his burden of demonstrating that his sentence was substantively unreasonable, and he cannot show that the district court plainly erred by ordering that its sentence run consecutively to a future, unimposed federal sentence. Accordingly, we AFFIRM the sentence imposed by the district court.

**AFFIRMED.**